■ Lynn Lucka Bergman, Respondent, v Franklin Bergman, Appellant. [923 NYS2d 460]—

Order, Supreme Court, New York County (Laura E. Drager, J.), entered on or about July 29, 2009, which granted plaintiff's motion to hold defendant in contempt for failure to pay obligations contained in the parties' judgment of divorce entered April 4, 2008, and order, same court and Justice, entered November 10, 2009, which denied defendant's cross motion for a downward modification of his support obligations, unanimously reversed, on the law, without costs, and the matter remanded for an evidentiary hearing on defendant's stated financial inability to comply with the court's judgment of divorce.

The record reflects the following facts: the parties were married in 1988, and had one son born in 1989. Plaintiff wife commenced an action for divorce in 2002. The court held a trial on financial issues in 2006, and issued a trial decision and order on June 26, 2007. In December 2007, defendant husband moved to reopen the trial, alleging a drastic decline in business income, and submitted evidence in the reopened divorce trial. As a result, the court rendered a second decision in February 2008 reducing the original award of maintenance from $7,500 to $5,000 per month, but leaving the other provisions of the divorce judgment unchanged.

On April 4, 2008, the court signed a judgment of divorce dissolving the marriage and awarding the parties joint custody of their child. The judgment directs defendant to pay, inter alia, child support, 100% of the child's tuition, room and board, and

books and supplies. Defendant must also pay spousal maintenance and is required to maintain life insurance in the amount of $1.5 million.

The court awarded plaintiff her former residence and the marital residence, both of which are located in Manhattan. She was also awarded 40% of defendant's business, then valued at $700,000, and 60% of her own business valued at $10,000, for a net award of $221,925. The court directed the parties to sell their home in Sagaponack, and ordered plaintiff to use the proceeds to repay a bank loan of $200,000.

In June 2008, plaintiff brought the first contempt motion against defendant who, five days later, cross-moved for a downward modification of his support obligations. A hearing was held in September 2008. The record reflects that the court issued a decision on the contempt motion after that hearing, dated October 31, 2008, in which it found defendant "willfully failed to make payments required" and that "[h]is failure to pay the sum due the wife was not a result of an inability to pay, but rather [was] because he chose to spend his money on other things."

Subsequently, the Justice recused herself for reasons having nothing to do with the parties, and the matter was transferred to another Justice. On March 6, 2009, the court denied defendant's application for downward modification without holding a hearing. The court stated that the "financial information appended . . . is incomplete and reveals greater income than that which he claims to have received."

On June 19, 2009, plaintiff moved for the second time for an order holding defendant in contempt. She alleged that defendant had missed some maintenance and support payments, and underpaid on others. By order dated July 1, 2009, the court directed defendant to pay child support arrears, and more than $14,000 to plaintiff representing interest on the equitable distribution award.

By notice of cross motion dated July 10, 2009, defendant sought downward modification of his obligations for the second time. Defendant annexed an affidavit asserting that sales at his company had declined since 2006 and had plummeted by 50% in the past year. He also attached an affidavit and report, sworn to July 10, 2009, by forensic accountant Martin Randisi, CPA, of Holtz Rubenstein Reminick.

The Randisi affidavit stated that the firm had made a forensic accounting analysis of defendant's income, as well as an accounting analysis of the financial circumstances of his company. The affidavit attached an accounting of all cash disbursements

from the company and all cash receipts and disbursements in defendant's personal bank account through April 2009, as well as a statement of net worth dated May 31, 2009 and defendant's 2008 tax return. After third-party verification, it was Randisi's opinion that there had been a significant decrease in compensation and profit to the company's owners between 2005 and 2009.

On July 27, 2009, in an oral decision on the record, the court summarily granted plaintiff's motion to hold defendant in contempt for failure to pay support obligations. The court did not allow defendant to present any of his financial expert's documentation and did not hold a hearing. According to the court, defendant "has had several hearings on this matter and . . . repeated hearings are not necessary, if in fact there has been a recent hearing."

On October 29, 2009, the court issued an order, entered November 10, 2009, denying defendant's cross motion for downward modification of his support obligations. Defendant appealed from both the July 27, 2009 decision granting plaintiff's contempt motion and the October 29, 2009 order denying defendant's cross motion for downward modification.

On appeal, defendant contends that he made a strong prima facie showing, supported by an affidavit and a forensic report, of a substantial change in his financial circumstances, and raised a legitimate issue as to his ability to pay. Therefore, he asserts, he was entitled to, at least, a hearing on his application for downward modification.

For the reasons set forth below, we agree. A hearing is required on a contempt motion when the party opposing the motion asserts a defense of financial inability to comply. Domestic Relations Law § 246 (3) in pertinent part states: "Any person may assert his financial inability to comply with . . . an order or judgment . . . as a defense in a proceeding instituted against him . . . to punish him for his failure to comply . . . and, if the court, upon the hearing of such contempt proceeding, is satisfied from the proofs and evidence offered . . . that the defendant is financially unable to comply . . . it may, in its discretion, until further order of the court, make an order modifying such order or judgment."

Further, Domestic Relations Law § 236 (B) (9) (b) provides that a party may seek downward modification if he or she has experienced a "substantial change in circumstances": "Upon application by either party, the court may annul or modify any prior order or judgment as to maintenance, upon a showing of the recipient's inability to be self-supporting or a substantial

change in circumstance or termination of child support awarded pursuant to section two hundred forty of this article, including financial hardship." There is no limit to the number of times a party may seek downward modification. The party must demonstrate that there has been a substantial change in circumstances to merit any downward modification. There is no right to a hearing absent a prima facie showing of entitlement to downward modification (*see Lloyd v Lloyd*, 226 AD2d 816 [1996]).

However, well-established precedent overwhelmingly supports a party's right to an evidentiary hearing before a finding of contempt (*Boritzer v Boritzer*, 137 AD2d 477 [1988]; *Comerford v Comerford*, 49 AD2d 818 [1975]; *Singer v Singer*, 52 AD2d 774 [1976]; *see also Gifford v Gifford*, 223 AD2d 669 [1996]). In *Singer*, this Court held that "[d]ue process requires that a hearing be held before one can be adjudged in contempt" (*id*. at 774), undoubtably because a finding of contempt may result in incarceration as, indeed, it did in this case.

Here, defendant has not had any opportunity to offer "proofs [or] evidence" at a hearing on either plaintiff's contempt motion or defendant's cross motion for downward modification.* The court entirely ignored the affidavits prepared by a reputable forensic accountant, and the voluminous documentation defendant presented. In the court's opinion, defendant had had "repeated days in court."

However, on this motion, defendant clearly presented new financial information and an expert affidavit explaining that defendant's circumstances had changed, and not for the better. Accordingly, defendant should have had a hearing to assess the new financial information and new expert affidavit (*see Comerford*, 49 AD2d at 818 [court reversed an adjudication for contempt, while observing that defendant's affidavit was "somewhat factually deficient," and remanded for a hearing, stating, "[I]t is clear that no one will suffer by virtue of the hearing directed and that the interests of justice will be served thereby"]). Concur—Andrias, J.P., Catterson, Moskowitz, Manzanet-Daniels and Román, JJ.

---

* At oral argument, plaintiff's appellate counsel eventually conceded that defendant had not been afforded a hearing on the motions at issue in this appeal.